Pocono Pines Corporation, Appellant, *v.* Commonwealth of Pennsylvania, Board of Property, and Pennsylvania Game Commission, Appellees.

Argued September 5, 1973, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Charles B. Zwally,* with him *John Havas* and *Shear-
er, Mette, Hoerner & Woodside,* for appellant.

*Benjamin B. Solomon,* Assistant Attorney General,
and *Raymond C. Miller,* Deputy Attorney General, with
them *Israel Packel,* Attorney General, for appellees.

OPINION BY JUDGE MENCER, November 1, 1973:
On July 1, 1902, Frank C. Miller (Miller) became
the sole owner of a tract of land, containing approxi-
mately 250 acres, located in Tobyhanna Township, Mon-

roe County, Pennsylvania, succinctly designated to be that part of the "Tench Francis Warranty which is situate on the left hand side of the Tobyhanna Creek in going down the same." Miller's ownership in this property was derived from a deed dated and recorded in the public records of Monroe County on July 1, 1902.

Miller retained ownership of this tract of land during the remainder of his life, and after his death in 1932 ownership vested in his heirs who sold their interest in the property in 1963. A subsequent transfer of the tract occurred in 1969 when Pocono Pines Corporation (Pocono) acquired title to the land.

During the entire period from July 1, 1902 to the present time the tract has been assessed in the name of Frank C. Miller and his successors in title who have timely paid the applicable taxes.

On or about June 29, 1918, the United States commenced a proceeding in the Federal District Court for the Middle District of Pennsylvania to condemn a number of tracts of land in Coolbaugh and Tobyhanna Townships, Monroe County, Pennsylvania. Included in the condemnation were two certain lots, pieces or parcels of land described in the proceeding as containing 821 acres and 80 perches and allowances in the warrantee names of Nalbro Frazier and Tench Francis and in the ownership of Consumers Coal and Ice Company of Bayonne, New Jersey.

The only published notice of the proceeding condemning these two lots was a notice of the meeting of the Board of Viewers. No notice of any kind was given to Frank C. Miller, the owner of record of the 250-acre tract here in dispute, nor was he ever made a party to the United States condemnation proceeding.

On May 5, 1949, the United States conveyed 14,019 acres of land in Monroe County to the Pennsylvania Game Commission. The Commonwealth of Pennsylvania claims that this conveyance included the 250-acre tract

which was conveyed to Miller by deed of July 1, 1902, and that title to the same vested in the United States as a result of the 1918 condemnation proceeding. The record does not disclose that either the United States or the Commonwealth of Pennsylvania ever cultivated or timbered the tract nor did they improve it in any way. The Pennsylvania Game Commission surveyed the tract in 1950 and marked the boundaries.

The procedural origin of this case was a petition filed by Pocono on December 26, 1970, with the Board of Property of the Commonwealth of Pennsylvania (Board).[1] The petition was directed against the Pennsylvania Game Commission and requested the Board to (1) order the Game Commission to prepare, execute and record in Monroe County, Pennsylvania, the necessary instruments to confirm the title of Pocono Pines Corporation in the disputed 250 acres of land and (2) order the Game Commission to account in full to Pocono for any and all timber, gas, oil or other minerals that have been removed from the tract in question.[2]

Following hearings and argument, the Board issued an order on December 27, 1972, denying the claim of Pocono and refusing the relief prayed for in Pocono's petition. This appeal followed and we conclude that the Board was in error in determining that Pocono has no title or interest in the 250-acre tract here in dispute.

The Board made a specific finding of fact that "[a]n examination of local property and tax records would have revealed ownership, at the time of condemnation, to have been in one Frank C. Miller." We hold that this is the key to a determination of this lawsuit. Mil-

---

[1] "The Board of Property shall also have jurisdiction to hear and determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth." Act of April 9, 1929, P. L. 177, art. XII, §1207, as amended, 71 P.S. §337.

[2] The record fails to disclose any such removal.

ler's interest in the property was readily ascertainable and yet he received no notice of the condemnation proceeding and was not made a party to that proceeding.

The Fifth Amendment to the United States Constitution[3] provides, *inter alia,* that no person shall be deprived of property without due process of law. In condemnation proceedings, due process requires that the owners of property adversely affected thereby be given adequate notice and an opportunity to be heard before the proceedings can constitutionally foreclose their rights. *Schroeder v. City of New York,* 371 U.S. 208, 83 S. Ct. 279, 9 L. Ed. 2d 255 (1962).

Our own Supreme Court declared this same basic concept when, in *Angle v. Commonwealth,* 396 Pa. 514, 518, 153 A. 2d 912, 914-15 (1959), it stated: "Nothing can be more fundamental in representative government than that no one may be deprived of life, liberty, or property without due process of law. And the most rudimentary requirement of due process in eminent domain proceedings is that the landowner shall know that his land is being taken or is about to be taken. Justice PITNEY superbly declared in Ochoa v. Hernandez y Morales, 230 U.S. 139, 161, that: 'The principle, known to the common law before Magna Charta, was embodied in that charter (Coke, 2 Inst. 45, 50) and has been recognized since the Revolution as among the safest foundations of our institutions. Whatever else may be uncertain about the definition of the term "due process of law" all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and *without notice* or an opportunity for a hearing.' " *See Pagni v. Commonwealth,* 179 Pa. Superior Ct. 213, 116 A. 2d 294 (1955).

In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), it

---

[3] U.S.C.A. Const. Amend. V.

was held that the kind of notice must be such as is reasonable under the circumstances. Certainly, here, no notice to the record owner and the one to whom the taxes were assessed and by whom they were being paid was not reasonable notice.

The 1918 condemnation proceeding purported to affect certain tracts located in the Tench Francis Warranty, which the United States designated as being owned by the Consumer Coal and Ice Company of Bayonne, New Jersey. This company held no interest in the title to the 250 acres involved in this controversy. Therefore, any notice published by the United States regarding the condemnation of land in the ownership of Consumer Coal and Ice Company could not be expected to notify Miller that the land being condemned was his land.

The facts of this case recall the case of *United States v. Chatham,* 323 F. 2d 95 (4th Cir. 1963), where the Court wrote: "The published notice was wholly deficient if intended as notice that the Head lands were being condemned. If each of the Heads, with a lawyer at his elbow, had read the published notice, they would not have surmised that their lands were involved. The published notice informed the reader that McAden lands were being condemned, and the McAdens had no known connection with the lands of the Heads." *Id.* at 99.

If we but substitute the name of Miller for "Heads" and that of Consumer Coal and Ice Company of Bayonne, New Jersey for "McAdens," we have the notice situation existing in the instant case. In *Chatham,* it was held that the lack of personal notice to the owner and the inadequacy of the description of the land in the published notice[4] vitiated the United States' entire

---

[4] *See Hess v. Westerwick,* 366 Pa. 90, 76 A. 2d 745 (1950), relative to adequate description required for effective tax sale of real property.

condemnation proceeding to the extent that in rem jurisdiction over the tracts in question was never acquired. The Government's condemnation proceeding was held to be a nullity.[5] The Court reasoned that "[t]hough full information [identification of the true owners] was so easily obtainable, apparently the United States made no inquiry in 1935 when it brought the condemnation proceeding. That was outrageously inexcusable, if the Government's intention at the time was to condemn the specific land it now claims." *Id.* at 99.

Likewise, here the condemnation proceeding did not afford Miller due process and did not divest him of his ownership rights in the 250-acre tract. We would also note that the power to condemn is qualified by the requirement that "just compensation" be made to the owner of the property. The Board made a finding of fact that, in connection with the 1918 condemnation proceeding, "[n]o distribution of any money paid into the Court registry by the United States Government was ever made to Frank C. Miller."

The Pennsylvania Game Commission further contends that it and the United States have continuously, adversely, and under claim of right, without any inter-

---

[5] *Accord, Angle v. Commonwealth, supra,* wherein we find the forceful pronouncement of Mr. Justice MUSMANNO: "The law of the land certainly envisages notice to all persons whose possessions are placed in jeopardy whether by private invasion or by governmental intervention. Notice in the law is the weather warning before the storm, it is the bell buoy announcing the perilous rocks and reefs in the channel, it is the fire alarm before the conflagration reaches catastrophe. Without notice to all parties concerned, a lawsuit is a meaningless aggregation of paper. Without adequate notice to a losing party in a lawsuit, the winner has achieved an empty victory. Without notice to a landowner that the Commonwealth intends to take his property, the Commonwealth acquires no higher rating than that of an individual trespasser who transgresses on land which does not belong to him." 396 Pa. at 522, 153 A. 2d at 916-17.

ruptions whatsoever, occupied and exercised full and complete dominion and control over the disputed tract for a period of twenty-one years and upwards immediately prior to the filing of Pocono's petition and, as a consequence, have acquired title to the tract by adverse possession. Leaving undecided the question of whether or not the Commonwealth or the United States, possessing the power of condemnation, has the further power to acquire lands for public use by adverse possession and without just compensation, we hold that the record does not disclose that the requirements for such an acquisition by adverse possession were fulfilled in this case. *See Conneaut Lake Park v. Klingensmith,* 362 Pa. 592, 66 A. 2d 828 (1949).

Accordingly, we set aside the order of the Board of Property of the Commonwealth of Pennsylvania and remand this case to it for further proceedings not inconsistent with this opinion.