393 A.2d 377

**Dewey Lee CURTIS, Appellant,**

v.

**REDEVELOPMENT AUTHORITY OF the CITY OF PHILADELPHIA and William D. Glockner and Winifred M. Glockner.**

Supreme Court of Pennsylvania.

Argued April 13, 1978.

Decided Oct. 5, 1978.

Arnold H. Rosenberg, Philadelphia, for appellant.

David S. Winston, Paul A. Cohen, Peter A. Galante, Philadelphia, for appellee, Redevelopment Authority.

Samuel Rappaport, Philadelphia, for appellees, William D. Glockner, et al.

Before O'BRIEN, ROBERTS, POMEROY, NIX, and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal[1] from the order of the Commonwealth Court of Pennsylvania which reversed the order of the Court of Common Pleas of Philadelphia County sitting *en banc.* The controlling issue in this case is whether, under all the facts and circumstances, appellant was provided with notice of the taking sufficient to meet the requirements of due process. The Commonwealth Court held that the easement holder, appellant, was deemed to have received constructive notice of a taking by appellee in 1962; therefore, his petition for damages was barred by the six year statute of limitations. Act of June 22, 1964, P.L. 84, Art. V, § 524, 26 P.S. § 1–524 (Supp.1978–79). For the following reasons, the order of the Commonwealth Court is reversed and the case is remanded to the chancellor for a determination of just compensation.

1. Jurisdiction for this action is founded on Section 204(a) of the Appellate Court Jurisdiction Act of 1970. 17 P.S. § 211.204(a) (Supp.1978–79).

On October 28, 1960, Dewey Lee Curtis, the appellant, was deeded title to a property designated as 229 Pine Street, in Philadelphia. The deed specifically reserved an easement in favor of the property conveyed in and over an alleyway three feet in width running from the rear of the property at 229 Pine Street over an abutting property (220 Delancey Street) to Delancey Street. This easement had been created by deed in 1843, apparently by a common owner.

In June, 1961, Philadelphia's City Council approved an urban renewal plan of the Philadelphia Redevelopment Authority (Authority) which included the property at 220 Delancey Street. Before the plan was approved a public hearing was held thereon and public notice of the hearing was given on three different dates in the three large Philadelphia newspapers of general circulation. Included in these notices was a detailed description of the land included in the plan and a list of the properties (by number and street) which would be condemned. On December 7, 1962, the Authority by resolution authorized acquisition of the property at 220 Delancey Street. On December 26, 1962, condemnation proceedings were begun by the filing of a petition by the Authority for leave to file bond. The petition included a description of the property at 220 Delancey Street by metes and bounds, not by street and number. The petition and the description did not mention or refer to the alleyway or the existence of any easement therein. The chancellor found as a fact that notice of this petition was not given to appellant. However, in a stipulation of facts the parties agreed of record that notice of the filing of the petition was given "in accordance with the then existing rules of service, in an Affidavit of Service of Notice of Petition for Leave to File Bond. . . ." The affidavit-exhibit executed by the Director of the housing division of the Authority stated a copy of the petition was handed to "each owner of the properties indicated . . . ." The property at 220 Delancey Street was eventually condemned by the Authority filing a bond securing the payment of all damages required by law. The servient tenement was posted with notices, but not the dominant tenement.

On April 21, 1966, the Redevelopment Authority conveyed title to 220 Delancey Street to William D. Glockner and wife. In the spring of 1970 the Glockners barred appellant from using the alleyway at 220 Delancey Street. On September 21, 1972, appellant instituted an action in equity naming the Authority and the Glockners as defendants requesting 1) that the Authority be directed to prepare and deliver a new or corrected deed to the Glockners which would specifically reserve appellant's easement in and over the alleyway; and 2) that the Glockners be prohibited from obstructing appellant's use of the alleyway in the future. After an evidentiary hearing the chancellor entered a decree nisi granting all of the relief prayed for. The chancellor ruled that since appellant had not received notice of the condemnation proceedings, the condemnation was a nullity as far as the easement interest was concerned. Exceptions filed to the decree nisi by the Authority and the Glockners were later argued before a court en banc (including the chancellor).

Later two of these judges, (the chancellor had died in the interim), entered a final decree sustaining the exceptions to the decree nisi in part.[2] The final decree reversed the chancellor's decree in so far as it directed the Authority to prepare and deliver a new deed to the Glockners, but the final decree directed that the Authority pay appellant damages to cover the value of the easement. The decree also granted appellant the right to file a request for the appointment of viewers to assess the damages nunc pro tunc and also stayed the statute of limitations. Appellant and the Authority filed an appeal in the Commonwealth Court. As stated the Commonwealth Court reversed the Court of Common Pleas and dismissed the complaint in equity.

Appellant here contends that he was denied due process and equal protection of the law because he was not given actual or constructive notice that his recorded easement was

2. The opinion accompanying the final decree stated that the chancellor had agreed with this disposition before he died. It should be also noted that after the chancellor's death, the parties agreed that the surviving judges could finally dispose of the issue.

to be condemned. The Authority concedes that it intentionally determined not to notify any holders of property interests apart from current recorded owners of a fee interest and tenants in possession. Appellant did not occupy the dominant tenement at that time and stated that he was unaware of the condemnation until 1970. Appellant contends that the failure to provide actual or constructive notice of the purported condemnation to a known holder of a recorded easement appurtenant deprives the easement holder of his interest in real property as required by due process of law under the Fourteenth Amendment to the United States Constitution; therefore, appellant urges that the purported condemnation be deemed a nullity leaving the recorded easement unextinguished.

The scope of review for an appellate court in equity matters is limited in that the chancellor's findings of fact confirmed by the court en banc are binding on appeal if supported by substantial evidence. *Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 351 A.2d 207 (1976). Nevertheless, conclusions derived from errors of law may be reviewed. *Pruner Estate,* 400 Pa. 629, 162 A.2d 626 (1960). The heart of the matter before us comprises the chancellor's conclusions 5, 6 and 7 adopted by the court *en banc,* which determined that appellant was denied his constitutional right to be heard and hence denied due process of law because he was not notified of the condemnation.

At the time of the taking in question, no statutorily defined form of notice to condemnees was required. *See* Comment to section 405 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–405 (Supp.1978–79). *See also* E. Snitzer, *Pennsylvania Eminent Domain* § 405–1 (Supp.1978–79). In *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the United States Supreme Court held that in order for notice to comply with due process, it must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to be heard. More precisely, in the context of an eminent domain proceeding, the Supreme

Court in *Schroeder v. New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), held that a landowner whose name and address were on the tax rolls and easily ascertainable was denied due process when newspaper notices and postings which did not contain her name were the only form of notice given. Similarly, in *Angle v. Commonwealth,* 396 Pa. 514, 153 A.2d 912 (1959), this Court held that the mere filing of highway plans in Harrisburg did not constitute notice to the landowner when the ultimate width of the highway appeared only from pencilled lines on the plan filed some 32 years before the actual widening.[3] In *Pocono Pines Corp. v. Commonwealth,* 10 Pa.Cmwlth. 466, 310 A.2d 719 (1973),[4] the Commonwealth Court required actual notice to one who would have been revealed as the property owner had the condemnor made a search of the local property and tax records. The court held that the ability to locate the owner of the property interest upon a search of local property and tax records to be "the key to a determination of [the] lawsuit." *Id.,* 10 Pa.Cmwlth. at 469, 310 A.2d at 721. We now hold that the notice provided here was insufficient for this taking of a recorded easement to comport with the requirements of due process. Thus, under the specific facts, when a record holder of an easement can be identified through investigation of land and tax records, any notice short of notice to the easement holder at the dominant tenement is insufficient. The United States Supreme Court held in *Schroeder* :

> The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. "Where

**3.** *See also Strong Appeal,* 400 Pa. 51, 161 A.2d 380 (1960); *Pagni v. Commonwealth,* 179 Pa.Super. 213, 116 A.2d 294 (1955) (Cases on which appellant relies, both of which concern whether the filing of highway plans is constructive notice to landowners of a taking).

**4.** The order was vacated by this Court for lack of jurisdiction for failure to join an indispensable party. *Pocono Pines Corp. v. Pennsylvania Game Commission,* 464 Pa. 16, 345 A.2d 709 (1975).

the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."

371 U.S. 208, 212–13, 83 S.Ct. 279, 282, 9 L.Ed.2d 255, *quoting Mullane v. Central Hanover Bank and Trust Co., supra,* 339 U.S. at 318, 70 S.Ct. 652.

There was no affirmative burden on appellant to inspect the servient estate in order to be put on notice by the postings. To the contrary, the burden was on the Authority to conduct a search for recorded interests and then to take reasonable steps to notify holders of such recorded interests. To hold otherwise would countenance the practice of the Authority of ignoring the recording system of this jurisdiction.[5]

The proper remedy. is that provided to the plaintiff by the court en banc, i. e., the right to seek damages from appellee, which right accrued when he received knowledge of the taking of his easement in 1970.[6] Appellant would have us declare his easement to be intact and unextinguished. The Restatement of Property § 507 provides that, "[a]n easement is extinguished by a taking of eminent domain of the servient tenement. . . ." Comment b of section 507 provides, *inter alia*:

Thus when land owned by A is appropriated by the state for the purpose of erecting a public building thereon, the title the state acquires is not derived from and through A. The state acquires a new title not dependent in any way upon the previously existing title of A. A's title is not transferred to the state but is extinguished by the exercise of an inherent power of the state. In the same way an easement is extinguished through the appropriation by the state of the land subject to it.

**5.** Because we decide the case on this issue, we find it unnecessary to reach appellant's second argument based on an alleged denial of equal protection of the laws.

**6.** Thus the statute of limitations does not act so as to bar the present remedy.

In brief, appellant's sole remedy, assuming he had been given adequate notice, would have been to seek an award of just compensation. The failure on the part of the Authority to grant adequate notice is not remedied by conferring upon appellant a greater right, especially when the rights of innocent parties, who subsequently purchased and developed the property, would be harmed irreparably. Thus, in accordance with the foregoing, the order of the Commonwealth Court is reversed, the complaint is reinstated, and the decree, as modified by the court en banc, is affirmed. Case remanded to the Court of Common Pleas for further proceedings consistent herewith.[7]

Each party to pay own costs.

. EAGEN, C. J., and MANDERINO, J., did not participate in the consideration or decision of this case.

7. The statutory established measure of damages in eminent domain proceedings is as follows:

Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

26 P.S. § 1–602(a) (Supp.1978–79).