Carol M. Captline and Equibank N.A., Co Executors of the Estate of Mike Mazzaro, Deceased v. County of Allegheny. Carol M. Captline, Co-Executor of the Estate of Mike Mazzaro, Deceased, Appellant.

Carol M. Captline and Equibank N.A., Co-Executors of the Estate of Mike Mazzaro, Deceased v. Solomon & Teslovich, Inc. and Ram Construction Co., Inc. Carol M. Captline, Co-Executor of the Estate of Mike Mazzaro, Deceased, Appellant.

Argued October 6, 1982, before President Judge CRUMLISH, JR. and Judges MACPHAIL and DOYLE, sitting as a panel of three.

*William W. Milnes,* with him *Carl Brandt* and *Gary L. Milnes, Brandt, Milnes, Rea and Wagner,* for appellant.

*Samuel P. Kamin,* Assistant County Solicitor, with him *James H. McLean,* County Solicitor, for appellee, County of Allegheny.

*Richard B. Tucker, III,* with him *Anthony P. Picadio, Tucker, Arensberg, Very & Ferguson,* for appellees, Solomon & Teslovich, Inc. and Ram Construction Co., Inc.

OPINION BY JUDGE MACPHAIL, May 2, 1983:

Carol M. Captline and Equibank N.A. (Appellants) have brought these appeals from orders of the Court of Common Pleas of Allegheny County sustaining the preliminary objections of Allegheny County (County)

to a petition for the appointment of viewers as well as the preliminary objections to a complaint in trespass and for an accounting filed by Solomon and Teslovich, Inc. and Ram Construction Company, Inc.

The facts of this case are stipulated.[1] Appellants are co-executors of the estate of Mike Mazzaro. Mazzaro acquired title to a 104.085 acre tract of land in Findlay Township, Allegheny County by a deed executed on February 17, 1955, from Cosgrove Coal Company[2] (Cosgrove Coal). The deed expressly excepted and reserved to Cosgrove Coal all the mineral rights underlying the tract of land.

On March 4, 1958 and May 5, 1959, the Board of Commissioners of Allegheny County (Commissioners) condemned (hereinafter the 1958/1959 condemnation) the tract of land for the purpose of constructing an airport.[3] The resolutions provided in pertinent part for the acquisition of title of the lands described ''in fee simple, said property being owned by Mike Mazzaro.'' The County filed a petition for the appointment of viewers in the Court of Common Pleas. Notice was given to Mazzaro, was posted on the property and was published in three local papers. The report of viewers, submitted to the Court of Common Pleas on October 19, 1961, determined the value of the property condemned to be $71,980.[4] The report did not allocate any amount of the award to Cosgrove Coal, nor did it make

[1] Although the trial court refers to "stipulated facts," there is no written stipulation of facts. Rather, the record of this case consists entirely of documentary evidence uncontested by either party.

[2] The deed was recorded in the Allegheny County Office for the Recording of Deeds on February 28, 1955.

[3] Section 2402(c) of the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §5402(c) gives the County authority to condemn land for the purpose of establishing and maintaining air navigation and terminal facilities. The airport is now known as the Greater Pittsburgh International Airport.

[4] Including compensation for delay in payment.

any reference to the coal interest. No appeal was taken from this report and Mazzaro received the full amount of the award.

On September 20, 1965, Cosgrove Coal[5] conveyed to Mazzaro, by way of quitclaim deed, all the mineral rights to the tract of land "together with the appurtenances thereunto belonging and all the estate, right, title and interest, claim or demand whatsoever of [Cosgrove Coal]." Nothing further occurred until July 18, 1979, when the Commissioners entered into a contract with Solomon & Teslovich for the grading, paving, drainage and lighting for the extension of a taxiway at the airport. The contract authorized the contractor to take possession of any coal excavated in the process of construction. This contract was subsequently assigned to Ram Construction which, in the course of construction, did remove coal underlying the tract of land herein at issue.

Appellants then filed their petition for the appointment of viewers pursuant to Section 502(e) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e), as well as an action in trespass against Solomon & Teslovich and Ram Construction. All defendants filed a variety of preliminary objections, which were consolidated for hearing and disposition by the trial court. The court held that the coal interest was validly taken by the 1958/1959 condemnation and was fully paid for pursuant to the award of the 1961 report of viewers, that any rights arising from Cosgrove Coal's claim to the coal interest were lost due to Cosgrove Coal's failure to assert any claim before the viewers after due notice had been provided, and that regardless of whether notice was properly given, any claim Mazzaro

---

[5] By certificate of amendment to the corporation's articles of incorporation dated March 1, 1955, the name of Cosgrove Coal was changed to Kirk Industries, Inc.

obtained from Cosgrove Coal would not be against Allegheny County, but rather would be against Mazzaro, who received the 1961 award, and thus the claim was extinguished by merger. The trial court thus sustained the preliminary objections and dismissed both actions. Appellants timely filed appeals from both dismissals.[6]

Our scope of review in eminent domain cases is limited to a determination of whether the court abused its discretion or committed an error of law. *Speicher Condemnation Appeal*, 58 Pa. Commonwealth Ct. 321, 324-25, 428 A.2d 282, 284 (1981).

The first issue which we must address is the extent of the 1958/1959 condemnation. Appellants argue that the condemnation effected only a taking of the surface estate[7] in fee simple and was not a taking of the mineral rights. Therefore, Appellants contend, the 1979 removal of the coal constituted either a trespass or a de facto taking. The question presented, then, is: what did the County intend when it resolved to take the property described "in fee simple, said property being owned by Mike Mazzaro"?

The term "fee simple" properly defined refers to the extent of alienability one would enjoy in the owner-

---

[6] The County, in its brief, contends that the appeals should be dismissed for failure to file exceptions pursuant to Pa. R.C.P. 1038 (d). The sustaining of preliminary objections to a petition for appointment of viewers is a final order and there is no requirement that exceptions to such a ruling be filed with the trial court en banc. *See Petition of Ramsey*, 31 Pa. Commonwealth Ct. 182, 375 A.2d 886 (1977). Furthermore, our Court has held that the Rules of Civil Procedure are inapplicable to an eminent domain proceeding. *See, e.g., Department of Transportation v. Hess*, 55 Pa. Commonwealth Ct. 27, 423 A.2d 434 (1980). As for the trespass action, Rule 1038 by its terms applies only to "the *trial* of an action" and therefore is inapplicable to a disposition on preliminary objections. An order sustaining preliminary objections in the nature of a demurrer is a final order. *See Hudock v. Donegal Mutual Insurance Co.*, 438 Pa. 272, 264 A.2d 668 (1970).

[7] And the necessary surface support.

ship of land. Black's Law Dictionary defines a fee simple estate as "one in which the owner is entitled to the entire property, with unconditional power of disposition during his life, and descending to his heirs and legal representatives upon his death intestate." *Id.* at 742 (4th Ed. 1968). It seems clear that this meaning of the term was intended by the Legislature when it gave the County the power to take land in fee simple.[8] Therefore, the statutory meaning of fee simple does not provide an answer to the question of the intent of the County in the 1958/1959 condemnation concerning these mineral rights. *Cf. Starkey v. City of Philadelphia,* 397 Pa. 512, 156 A.2d 101 (1959) (At issue was whether a base or full fee was taken for an airport pursuant to Section 2 of the Act of May 12, 1925, P.L. 614, 53 P.S. 14162).

There exists a body of law, however, which does discuss the *extent* of ownership rights. "The ownership of the surface carries with it, if there be no obstacle to the application of the general rule, title downward to the center of the earth and upward indefinitely." *Delaware and H. Canal Co. v. Hughes,* 183 Pa. 66, 69, 38 A. 568, 569 (1897). "That a title in fee to land is a title to everything seems an elementary statement. . . ." *Brooks v. Shepard,* 157 F. Supp. 379, 382 (S.D. Ala. 1957) (applying Alabama law). Thus, one would expect in the normal case that a taking of land

---

[8] The common law and early Pennsylvania law view concerning the estate acquired by condemnation was that only a conditional fee (with possibility of reverter) or an easement was taken. *See Pittsburgh National Bank v. Equitable Gas Company,* 421 Pa. 468, 220 A.2d 12, *cert. denied,* 385 U.S. 988 (1966) ; *Long v. Monongahela City School District,* 395 Pa. 618, 151 A.2d 461 (1959). However, in 1937 the Legislature provided a method by which these lesser estates could be expanded into a full fee. Act of July 2, 1937, P.L. 2793, *as amended,* 53 P.S. §§1171-1173. In 1949, the Legislature gave to political subdivisions the general power to condemn in fee simple. Act of April 14, 1949, P.L. 442, 26 P.S. §201.

in fee would also involve a taking of the minerals. *Brooks v. Shepard. Cf. Sunbeam Coal Corp. v. Pennsylvania Game Commission*, 37 Pa. Commonwealth Ct. 469, 391 A.2d 29 1978) (wherein the Game Commission filed a condemnation resolution in fee simple leading a mineral rights owner to file a petition for appointment of viewers, after which the Commission clarified its position as a taking of the surface only).

The problem which is presented here is that Pennsylvania law recognizes three distinct estates in land which can be held in fee simple separate and distinct from each other: the surface, the mineral rights and the right of support. *See, e.g., Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A.2d 227 (1943). Here, at the time of the condemnation, it would seem that the "property being owned by Mike Mazzaro" did not include the mineral rights. Still, we cannot subscribe to a view that holds that the actual extent of Mazzaro's ownership per se delineates the extent of the County's intended condemnation. *Cf. Curtis v. Redevelopment Authority of Philadelphia*, 482 Pa. 58, 393 A.2d 377 (1978) (Petition for appointment of viewers did not mention easement, yet easement was found to be condemned with the fee simple). Rather, we believe that, absent evidence that the County *in fact* knew of the existence of a separate mineral estate owner or other evidence indicating contrary intent, such as the type of evidence presented to the viewers for their consideration, *see Cushing v. Gillespie*, 208 Okla. 359, 256 P.2d 418 (1953), a condemnation in fee simple of a tract of land must be considered a condemnation of all estates in the land. *Cf. Porter v. Commonwealth*, 419 Pa. 596, 215 A.2d 646 (1966) (In defining the word "property" in Section 507 of the Code, 26 P.S. §1-507, the Court refused to split a single land condemnation into multiple proceedings in the face of condemnee's claim that its fee simple interest in the minerals was a separate

property); *Department of Transportation v. Haydu,* 1 Pa. Commonwealth Ct. 561, 569, 276 A.2d 346, 350 (1971) (where Judge ROGERS quoted with approval the appellee's argument in *Porter* that "[t]he doctrine of fee simple ownership of minerals should be limited to the field of mineral law, from whence it derived and should not be extended to the law of eminent domain where it is neither practical or logical"). In the record before us, there exists no evidence from which a contrary intent can be inferred. The County's intention to construct airport facilities seems to us, on the other hand, to provide further support for an inference that the County did intend to condemn *all* estates in the land.[9]

Having determined, in agreement with the trial court, that the County intended to condemn the mineral interests by the 1958/1959 condemnation, we must next examine Appellant's claim that a present action seeking compensation would not be barred because the County failed to give Cosgrove Coal proper notice. The trial court concluded, and we agree, that there was compliance with the *statutory* provisions for posting and publication of notice in effect at that time. However, we disagree with the trial court that the evidence presented shows that the notice provided complied with the notice mandated by the due process clause of the fourteenth amendment. U.S. Const. amend. XIV, §1. In this regard the case of *Curtis v. Redevelopment Authority of Philadelphia,* 482 Pa. 58, 393 A.2d 377 (1978) is controlling. In *Curtis* an easement holder of record was not given notice of the 1960 condemnation of the servient tenement. The Court, after a review of relevant state and federal cases, held:

---

[9] We would note that according to the 1955 deed, Mazzaro purchased his surface interest for $6,000 and in 1961 received an award of $71,989, suggesting that the viewers considered that more than the surface interest was being condemned.

There was no affirmative burden on [the easement holder] to inspect the servient estate in order to be put on notice by the postings. To the contrary, the burden was on the Authority to conduct a search for recorded interests and then to take reasonable steps to notify holders of such recorded interests. To hold otherwise would countenance the practice of the Authority of ignoring the recording system of this jurisdiction. (Footnote omitted.)

*Id.* at 65, 393 A.2d at 380.

Cosgrove Coal's interest was easily determinable through a simple title search. Thus the County was required to undertake "reasonable steps" to provide actual notice to Cosgrove Coal. Unfortunately, we are unable to determine what "reasonable steps" would be in this case. The stipulated facts do not disclose whether Cosgrove Coal received actual notice, or whether Cosgrove Coal's mailing address could have been ascertainable. Further evidence is necessary before a determination can be made as to whether posting and published notice alone satisfied the requirements of due process in this matter.

The trial court, recognizing the importance of Appellant's due process claims, determined that it would also analyze whether Mazzaro[10] could assert any further claim against the County in light of the 1961 award. The court held that Mazzaro did acquire all rights subsequent to the condemnation which Cosgrove Coal may have had as a result of the taking,[11] but that

---

[10] And consequently his estate.

[11] Generally, one who acquires title to property subsequent to the time of taking is not entitled to bring an eminent domain proceeding. *Rednor & Kline, Inc. v. Department of Highways*, 413 Pa. 119, 121, 196 A.2d 355, 356 (1964). *See Green v. Pittsburgh*, 311 Pa. 132, 166 A. 586 (1933). The trial court held that the quitclaim deed transferred Cosgrove Coal's personal claim to Mazzaro. That ruling has not been contested on appeal.

Mazzaro's claim was against himself and not the County as a result of his receipt of the 1961 award. The Court reached this conclusion by interpreting Section 2627 of the Second Class County Code[12]—"Upon payment of the compensation for land or property in accordance with the order of distribution, all claims for compensation shall be deemed paid and satisfied"—to mean that, as a matter of law, the 1961 award was full compensation for all damages.

We would certainly agree with the trial court that the purpose of Section 2627 is to ensure that the full measure of damages is determined in a single proceeding. However, this case presents a unique set of circumstances. There is nothing in the documentary evidence before us to show that the viewers gave full consideration to the value of the coal interest, nor can we determine from that evidence that Mazzaro took any active steps to acquire compensation for the coal interest from the viewers in 1961. Cosgrove Coal certainly did not present any claim for damages and the viewers did not pay into court an award for the coal interest.[13] Disregarding for the moment the transfer of Cosgrove Coal's claim to Mazzaro, principles of fairness dictate that a person who was never notified of a condemnation and whose interest was not protected in the proceedings must later be permitted to seek compensation from the condemning authority. *See Curtis.* If compensation was improperly paid to other parties, then it should be the condemnor's duty to obtain reimbursement.[14]

---

[12] 16 P.S. §5627. The Second Class County Code provisions on eminent domain were applicable at the time of the condemnation of the property.

[13] *See* Section 2630 of the Second Class County Code, 16 P.S. §5630.

[14] This situation differs from that presented in *Green v. Pittsburgh,* 311 Pa. 132, 166 A. 586 (1933), in which a tenant in common's

We do recognize, however, that Cosgrove Coal's claim *was* transferred to the party, Mazzaro, who the County contends was previously paid for the interest. We have no desire to allow Mazzaro's estate to obtain a windfall as a result of these unique set of circumstances, especially in light of the apparently high compensation Mazzaro received in comparison to his purchase price. *See* note 9, *supra*. Therefore, should this case on remand proceed to a Board of View, the viewers must consider the extent to which Mazzaro did obtain compensation previously for the mineral interest and award damages only to the extent not previously compensated. *Cf. Department of Transportation v. Gardone,* 67 Pa. Commonwealth Ct. 273, 446 A.2d 1369 (1982) (damages not contemplated in prior condemnation can be compensated in later action). The trial court on remand shall consider the question of notice, in accordance with this opinion's previous treatment of that issue. Once the Court determines when notice was provided to the owner of the mineral interest, it can then answer the question of the applicability of the statute of limitations, which was raised before, but not determined by, the court. In this regard, the trial court should note the Supreme Court's determination on the statute of limitations question in *Curtis,* 482 Pa. at 65, 393 A.2d at 380.

The trial court's dismissal of the trespass action is affirmed in view of our determination that the coal interest was subject to the prior condemnation. *See Curtis.*

---

name was stricken from the caption of an eminent domain proceeding and all damages were paid to the other co-tenant. The Court determined that the aggrieved owner should have known of the striking of his name and thus held that he had no further claim against the condemnor. It is also obvious from the case that the extent of damages to his estate were fully compensated by the viewers, albeit to the wrong party.

## ORDER

The order of the Court of Common Pleas of Allegheny County in No. GD 81-02291, dated October 30, 1981, is reversed and remanded for proceedings not inconsistent with this opinion.

The order of the Court of Common Pleas of Allegheny County in No. GD 81-03197, dated October 30, 1981, is hereby affirmed.