Carol M. CAPTLINE and Equibank, N.A., as Co–Executors of the Estate of Mike Mazzaro

v.

COUNTY OF ALLEGHENY

Carol M. Nicoletti, formerly Carol M. Captline, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 8, 1995.

Decided July 18, 1995.

Louis J. Kober, II, for appellant.

Bert M. Moldovan, Asst. County Sol., for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

■ Carol M. Captline and Equibank, N.A., co-executors of the Estate of Mike Mazzaro, (collectively, Mazzaro), appeal from an order of the Court of Common Pleas of Allegheny County (trial court) which, on remand, dismissed Mazzaro's claim against Allegheny County (County) for compensation for the taking of the mineral estate[1] in certain land located in Findlay Township.

This case has a lengthy and involved background which is summarized as follows. In 1955, Mike Mazzaro acquired title to 104.085 acres of land in Findlay Township from Cosgrove Coal Company (Cosgrove Coal). In the deed, Cosgrove Coal expressly reserved all the mineral rights underlying the land. In 1958 and 1959, the County condemned the land "owned by Mike Mazzaro" for the establishment and maintenance of air navigation and terminal facilities[2] and petitioned for appointment of a Board of Viewers. Mazzaro received notice of the condemnation, but Cosgrove Coal did not. In 1961, a Board of Viewers awarded Mazzaro $71,980.00 in compensation and delay damages but did not allocate any amount to Cosgrove Coal, nor did the Board of Viewers make reference to the mineral interests. In 1965, Mazzaro acquired the subsurface mineral rights "[t]ogether with the appurtenances thereunto belonging and all the estate, right, title and interest, claim or demand whatsoever of [Cosgrove Coal]"[3] by quitclaim deed from Cosgrove Coal's successor, Kirk Industries.

Mazzaro died in 1974, and his estate succeeded to his interest in the mineral rights.

In 1979, the County Commissioners entered into a contract for grading, paving, drainage and lighting for extension of a taxiway at the airport which was constructed on the subject land; the contract gave the contractor the right to any coal excavated in the process of construction. After the contractor excavated the coal, Mazzaro filed a petition for the appointment of a Board of Viewers, claiming a de facto taking, and Mazzaro also filed a trespass action against the contractor.[4] The County filed preliminary objections to the petition for appointment of viewers, and the contractors filed preliminary objections to the trespass action. The trial court consolidated the actions and sustained both sets of preliminary objections. Mazzaro appealed to our court.

In an opinion dated May 2, 1983[5] (our 1983 opinion), we agreed with the trial court that the County had taken both the surface and mineral estates at the time of the 1958/59 condemnation and we also agreed with the trial court's dismissal of the trespass action. However, we remanded the case for consideration of (1) whether Cosgrove Coal, the owner of the mineral estate, had received adequate notice in light of United States Supreme Court decisions and our decision in *Curtis v. Redevelopment Authority of the City of Philadelphia*, 482 Pa. 58, 393 A.2d 377 (1978), and (2) whether the statute of limitations had run as to a claim for compensation.[6] Mazzaro filed a Petition for Reargu-

---

1. Pennsylvania recognizes three separate estates in land which can be held in fee simple separate and distinct from each other: the surface estate, the mineral rights estate and the support estate. *Captline v. County of Allegheny*, 74 Pa.Commonwealth Ct. 85, 459 A.2d 1298 (1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984).

2. On March 4, 1958 and on May 5, 1959, the Board of Commissioners of Allegheny County adopted resolutions condemning two parcels of land in Findlay Township, Allegheny County, owned by Mike Mazzaro. We refer to this as the 1958/59 condemnation.

3. (R.R. at 12(a).)

4. Mazzaro's de facto taking action was filed on January 28, 1981. The trespass action was also filed in 1981.

5. *Captline.*

6. We said:
   The trial court on remand shall consider the question of notice, in accordance with this opinion's previous treatment of that issue. Once the Court determines when notice was provided to the owner of the mineral interest, it can then answer the question of the applicability of the statute of limitations, which was raised before, but not determined by, the court.
   *Captline*, 74 Pa.Commonwealth Ct. at 95, 459 A.2d at 1303.

ment, which we denied; on further appeal, the U.S. Supreme Court denied certiorari.

In a deposition following the remand, William N. Nicholls, who had been Director of the County's Claims and Investigation Department at the time of the condemnation and of the Board of Viewers' award, testified that the County did not notify Cosgrove Coal of the condemnation because, contrary to the trial court and our 1983 opinion, the County did *not* condemn the mineral estate reserved by Cosgrove Coal.[7] On remand, the trial court considered only the portion of Nicholls' testimony dealing with notice and refused to consider Nicholls' testimony that the County did not condemn Cosgrove Coal's mineral estate. However, the trial court did consider information received following our 1983 opinion but before the trial court issued its decision on remand which indicates that Mazzaro purchased the mineral rights by exercising an option which he had acquired in 1955.[8]

In its opinion following proceedings on remand, the trial court determined: (1) that Cosgrove Coal's address was readily ascertainable at the time of the condemnation and that the County did not give Cosgrove Coal proper notice of the condemnation;[9] and (2)

that "the County acquired all interests that Mr. Mazzaro held in the surface and mineral rights as of the date of the taking", and because Mazzaro did not seek compensation for loss of the option to purchase Cosgrove Coal's mineral estate at the time of the 1958/59 condemnation, Mazzaro's claim is barred by the statute of limitations. It is the appeal from this decision which is currently before us.

On appeal,[10] Mazzaro argues that (1) the trial court erred in determining that Mazzaro is precluded from obtaining compensation for the taking of the mineral estate; (2) the trial court erred in concluding that Mazzaro's claim is barred by the statute of limitations; and (3) Mazzaro should proceed on remand before a Board of Viewers. We agree with all three of Mazzaro's arguments.

Our remand clearly directed the trial court to take additional information on whether Cosgrove Coal received reasonable notice of condemnation of its mineral interests.[11] We also directed the trial court to answer the question of the applicability of the statute of limitations. The trial court followed our directive with regard to notice; however, in

---

**7.** According to Nicholls, he testified before the Board of Viewers as to the agreed upon price for the taking, before which he checked the assessments and the deed and discovered that the deed reserved Cosgrove Coal's interest in the mineral estate. In the deposition, Nicholls stated that the address and the name of Cosgrove Coal, the owner of the mineral estate, was a matter of record in the County and could be found on the assessment records and that when he testified on behalf of the County as to the damages to be paid to Mazzaro, he did not include the coal in his measure of damages because he knew that Mazzaro did not own the coal. (R.R. at 61(a)–63(a), 64(a), 65(a).) Finally, Nicholls testified that he never gave notice of the condemnation to Cosgrove Coal because: "They were not involved. There was no reason to give them notice." (R.R. at 66(a).)

**8.** Although there seems to be no doubt that an option existed, the option itself has not been found and no one knows its exact terms. (S.R.R., Transcript of Proceedings, February 7, 1994, at 12.)

**9.** Because Mazzaro held an option to purchase the mineral estate, the trial court concluded that Cosgrove Coal's right to compensation was limited to the value of its right to remove coal until

1965, when Mazzaro exercised his option, and the $900.00 option price. This would certainly be one means of assigning a value to Cosgrove Coal's retained interest in the mineral estate.

**10.** Our scope of review of a trial court decision in an eminent domain matter is limited to determining whether the trial court abused its discretion, committed an error of law, or whether the findings and conclusions are supported by sufficient evidence. *In re Waite*, 163 Pa.Commonwealth Ct. 283, 641 A.2d 25, *appeal denied*, 539 Pa. 657, 651 A.2d 543 (1994).

**11.** We said:

[T]he County was required to undertake "reasonable steps" to provide actual notice to Cosgrove Coal. Unfortunately, we are unable to determine what "reasonable steps" would be in this case. The stipulated facts do not disclose whether Cosgrove Coal received actual notice, or whether Cosgrove Coal's mailing address could have been ascertainable. Further evidence is necessary before a determination can be made as to whether posting and published notice alone satisfied the requirements of due process in this matter.

*Captline*, 74 Pa.Commonwealth Ct. at 93, 459 A.2d at 1302.

considering the statute of limitations question, the trial court did not rely on *Curtis* as directed but, instead, concentrated on the additional information that, at the time of the 1958/59 condemnation, Mazzaro, the owner of the surface estate, also held an option to purchase the mineral estate.[12] We believe that the trial court's emphasis on the option was misplaced.

■ The trial court determined that Mazzaro's option created a contract right to purchase the mineral estate and that "the condemnation of the entire estate, including the mineral rights, rendered the exercise of the option to purchase the mineral rights impossible ... [so that], at the time of the condemnation, Mazzaro was entitled to seek damages for the value of his option." (Trial ct. op. at 5.) The trial court reasoned that because Mazzaro failed to seek such damages at the time of the condemnation, the statute of limitations bars his present action for compensation. We agree with the trial court that Mazzaro's option to purchase the mineral estate created a contract right and that

Mazzaro could have sought compensation for the destruction of that contract right *had he known of the taking of the mineral estate;* however, we note that there is no evidence that Mazzaro knew of the taking of the mineral estate at the time of the condemnation. Moreover, we do not agree that Mazzaro's failure to seek compensation for the extinguishment of the option precludes the present action for compensation for taking of the mineral estate.[13] Although the trial court recognized that an option is a contract right, it treated the option as if it were equivalent to a real estate interest. We believe that these are two separate interests and should be treated as such. What matters here is not whether Mazzaro's option was destroyed, but whether the right to claim compensation for condemnation of the mineral estate is barred by the statute of limitations.[14]

Our analysis is guided by the Pennsylvania Supreme Court's decision in *Curtis*. In *Curtis*, the Philadelphia Redevelopment Authority acquired land in 1962 by eminent domain

12. The trial court's emphasis on the option information is particularly puzzling in light of the fact that the trial court refused to consider the new information from Nicholls concerning the intended scope of the 1958/59 condemnation. The option information considered was no more relevant than the information not considered.

13. The trial court relied on *Appeal of Synes*, 401 Pa. 387, 164 A.2d 221 (1960). However, while we agree that *Appeal of Synes* is pertinent, we do not believe that it leads to the trial court's conclusion. In *Appeal of Synes*, the School Authority condemned property on which Synes held an option to purchase. Although Synes' down payment was returned, he sought compensation, arguing that his option made him the equitable owner of the property, and that, as such, he was entitled to damages for the condemnation. Our Supreme Court determined that because Synes had not elected to purchase by exercising the option, legal and equitable title remained in the existing legal owner. However, although Synes was not entitled to compensation for loss of an equitable interest in the land, the Supreme Court did indicate that Synes could be compensated for loss of his contractual right to purchase, and it remanded for a determination of the value of the option destroyed by the condemnation. Applying *Appeal of Synes* here, we conclude that at the time of the 1958/59 condemnation Cosgrove held both legal and equitable title to the mineral estate and all that Mazzaro held was a contractual interest in an option to purchase. A critical

difference between this case and *Appeal of Synes* is that, in *Appeal of Synes*, the optionee knew that the property on which he held an option had been condemned. Had it been clear that the County intended to condemn the mineral estate on which Mazzaro held the option, *Appeal of Synes* indicates that Mazzaro could have sought compensation for the loss of his contract right at that time. However, the County's notice of condemnation of land "being owned by Mike Mazzaro" is not adequate to give Mazzaro notice that the mineral estate owned of record by Cosgrove Coal was also being taken or that his option in that mineral estate was destroyed.

14. We recognize that the right to compensation for the taking of property is a personal interest which does not run with the land and is not normally transferred to subsequent purchasers. *Appeal of Synes*. However, in this case, Mazzaro, the subsequent purchaser of the mineral estate, also acquired Cosgrove Coal's personal right to receive compensation for the taking of the real estate interest. In our 1983 opinion we dealt with the transfer of the interest in compensation to Mazzaro, stating: "Generally, one who acquires title to property subsequent to the time of taking is not entitled to bring an eminent domain proceeding. The trial court held that the quitclaim deed transferred Cosgrove Coal's personal claim to Mazzaro. That ruling has not been contested on appeal." *Captline*, 74 Pa.Commonwealth Ct. at 93, n. 11, 459 A.2d at 1302, n. 11 (citations omitted).

without giving notice to the holder of a recorded easement over the property, just as the County here failed to give notice to the recorded owner of the mineral estate. When a subsequent purchaser from the Redevelopment Authority barred access across the property, the easement holder brought suit seeking to have his easement reinstated. Our Supreme Court ruled that the condemnation extinguished the easement but that the easement holder had a right to receive damages.

■ Most important for our purposes here, the Supreme Court, in *Curtis*, determined that because the Redevelopment Authority had failed to give adequate notice at the time of the condemnation, the statute of limitations did not bar the easement holder's right to compensation. In reaching this conclusion, the Supreme Court said:

> In *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the United States Supreme Court held that in order for notice to comply with due process, it must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to be heard. More precisely, in the context of an eminent domain proceeding, the Supreme Court in *Schroeder v. New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), held that a landowner whose name and address were on the tax rolls and easily ascertainable was denied due process when newspaper notices and postings which did not contain her name were the only form of notice given. ... [W]hen a record holder of an easement can be identified through investigation of land and tax records, any notice short of notice to the easement holder at the dominant tenement is insufficient.

*Curtis*, 482 Pa. at 63–64, 393 A.2d at 379–80.[15] Our Supreme Court also determined that the right to seek damages for extinguishment of the easement accrued, and the statute of limitations began to run, in 1970 when the easement holder had notice of the extinguishment of his interest in the real estate.[16]

■ Here, the trial court assumed that because the County gave Mazzaro notice of the taking of the land "being owned by Mike Mazzaro", Mazzaro had a responsibility to find out whether the County was also condemning Cosgrove Coal's mineral estate thereby destroying Mazzaro's option to purchase the mineral estate. The trial court also assumed that the statute of limitations began to run from the date of notice to Mazzaro of the condemnation of his interest in the real estate. We do not agree with either of these assumptions.[17] First, the County's notice of the condemnation of land owned by Mazzaro did not give rise to any affirmative obligation on Mazzaro's part to inquire whether the County was also condemning Cosgrove Coal's mineral estate; rather, the County had the burden of giving notice of the condemnation to the holders of all recorded interests.[18] Moreover, because

---

**15.** In *Curtis*, as here, the original eminent domain action occurred before enactment of the new Eminent Domain Code. Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101—1–903. In *Curtis*, the Court noted:

> At the time of the taking in question, no statutorily defined form of notice to condemnees was required. *See* Comment to section 405 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–405 (Supp.1978–79). *See also* E. Snitzer, *Pennsylvania Eminent Domain* § 405–1 (Supp.1978–79).

*Curtis*, 482 Pa. at 63, 393 A.2d at 379.

**16.** The statute of limitations does not begin to run until a cause of action accrues.

**17.** At the time of the 1958/59 condemnation, Mazzaro held an option to purchase the mineral estate; this is a contract right, not an interest in real estate. *Appeal of Synes.* Even if Mazzaro had had notice of the taking of the mineral estate, he could not have claimed compensation for its taking because he did not own the mineral estate; his only remedy at the time of the 1958/59 condemnation would have been to seek damages for destruction of the option. *Id.*

**18.** In *Curtis* the Supreme Court determined the holder of the easement did not have any affirmative burden to inspect the servient estate over which the easement passed in order to be put on notice by posting of that property. The Court stated, "the burden was on the Authority to conduct a search for recorded interests and then to take reasonable steps to notify holders of such

the County never gave notice of the condemnation of the mineral estate to Cosgrove Coal, the record owner of that estate, the right to seek damages for the condemnation of the mineral estate had not accrued at the time that Cosgrove Coal transferred its interest to Mazzaro. In fact, it was not until 1979 when the contractor excavated the coal that the owner of the mineral estate, by then Mazzaro, finally had notice of the condemnation. At that time, the owner's right to seek compensation accrued and the statute of limitations began to run. Because a six year limitations period applies to a de jure condemnation and Mazzaro brought this action in 1981, this matter was brought well within the applicable limitations period.[19]

Accordingly, we reverse and remand, and we direct the trial court to send this matter to the Board of Viewers, with directions to the Board of Viewers to assess the total value of the surface and mineral estates in the land taken as of the date of taking used in the original Board of Viewers' report, to subtract the amount already paid to Mazzaro and to pay Mazzaro additional compensation owed, if any.

### ORDER

AND NOW, this 18th day of July, 1995, the order of the Court of Common Pleas of Allegheny County, dated April 4, 1994, is reversed, and we remand and direct the trial court to send this matter to the Board of Viewers, with directions to the Board of Viewers to assess the total value of the surface and mineral estates in the land taken as of the date of taking used in the original Board of Viewers' report, to subtract the amount already paid to Mazzaro and to pay Mazzaro additional compensation owed, if any.

Jurisdiction relinquished.

recorded interests. To hold otherwise would countenance the practice of the Authority of ignoring the recording system of this jurisdiction." *Id.* at 65, 393 A.2d at 380. Here, likewise, the County bore the burden of searching for recorded interests and notifying the holders of those interests that it had condemned their property.

19. A six year statute of limitations applies to a de jure taking. *Curtis.* The statute of limitations for a de facto taking is twenty-one years. Section 5530(a)(3) of the Judicial Code, 42 Pa.C.S. § 5530(a)(3).