**Norma L. JOINER**

v.

**The SOUTHWEST CENTRAL RURAL ELECTRIC CO–OPERATIVE CORPORATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2001.

Decided Nov. 8, 2001.

Anthony Sottile, III, Indiana, for appellant.

No appearance entered for appellee.

Before PELLEGRINI, J.,
LEADBETTER, Judge (P.), and
JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Southwest Central Rural Electric Co-Operative Corporation (Southwest Central) appeals from an order of the Court of Common Pleas of Cambria County (trial court) denying Southwest Central's Preliminary Objections to Norma L. Joiner's (Joiner)[1] Petition for Appointment of Board of Viewers.

On March 4, 1963, Paul and Lula Joiner, Joiner's parents and predecessors in interest, executed a Grant of Easement and Right of Way to Barnes and Tucker granting "the perpetual right to construct, maintain, add to, repair, relocate, and patrol a line of four poles for the transmission of electricity...." The easement, however, was never recorded. The easement was needed to provide electric power to a coal mine that Barnes and Tucker operated.[2] Pursuant to the easement, Barnes and Tucker cleared a right-of-way and installed poles and wire. When the coal mine closed, Barnes and Tucker ceased using its easement, the power lines were gone, the transmission poles had been sawed off, and substantial vegetative growth had been allowed. On February 13, 1988, Joiner acquired the property by deed without record notice of the easement.

In late 1991, Giles Dumm contacted Southwest Central requesting electric service for a residence he was building on property he had purchased from Join-er. Southwest Central contacted Barnes and Tucker to inquire about the power line on Joiner's property because Barnes and Tucker was attempting to dispose of its power lines and line sites. In November 1991, Barnes and Tucker orally agreed with Southwest Central that it would assign its rights under the easement to Southwest Central, including the right to enter Joiner's property to trim trees and erect power lines. Based on verbal permission from Barnes and Tucker, in November of 1991, Southwest Central entered Joiner's property without her consent and cut down and trimmed trees and installed three poles and power lines, two of which were on Joiner's property. Southwest Central and Barnes and Tucker formally transferred the easement in February of 1992.

In 1998, Joiner filed an action in ejectment seeking to have Southwest Central remove its poles and lines and restore her to the full possession of her land. Southwest Central filed preliminary objections claiming that it had the power of eminent domain and that any remedy available to Joiner had to be pursued under the Eminent Domain Code. The trial court granted Southwest Central's preliminary objections but allowed Joiner to file an amended complaint in the form of a Petition for Appointment of Board of Viewers contending that Southwest Central did not have a right to enter the land because any easement that was granted to Barnes and Tucker did not grant any rights to Southwest Central to service residential customers and it was abandoned or extinguished. Once Joiner filed that petition, Southwest Central filed preliminary objections alleg-

1. By Order dated June 1, 2001, Joiner was precluded from filing a brief.

2. The electric transmission power line ran through the Joiner property from Dutch Run Portal to Substation Number 18.

ing that it had the legal right to enter Joiner's property pursuant to the Barnes and Tucker easement.

■ After a hearing,[3] the trial court denied Southwest Central's preliminary objections to Joiner's Petition for Appointment of Board of Viewers. Not addressing whether the easement was abandoned or extinguished, the trial court adopted and based its decision on Section 4.11 of the Third Restatement of Property, Servitudes, although it had not previously been adopted by any other Pennsylvania court, which provides that "[u]nless the terms of the servitude under § 4.1 provide otherwise, an appurtenant easement or profit may not be used for the benefit of property other than the dominant estate." Using Comment b to the Restatement, a two-step analysis was followed to determine whether the easement or profit was appurtenant or gross and, if appurtenant, what was the identity of the dominant estate. The trial court concluded that the easement was appurtenant and that the dominant estate was that of Barnes and Tucker, and that the Barnes and Tucker easement had been for the purpose of providing electricity to the Barnes and Tucker coal mine and not for residential electricity, Southwest Central's use. Southwest Central now appeals.[4]

Southwest Central contends that the trial court analysis is flawed because Section 4.11 of the Third Restatement of Property, Servitudes, has not been adopted in Pennsylvania. It argues that there is nothing in the agreement indicating that the power line use was to provide service to Barnes and Tucker's coal mine, and the plain language of the easement establishes that its purpose was for the transmission of electric service without restriction.

■ Though Restatement provisions dealing with easements offer an overall scheme for the interpretation of easements, we agree with Southwest Central that Section 4.11 of the Third Restatement of Property, Servitudes, has not yet been adopted and those provisions are at variance with the pronouncements of our Supreme Court on how easements are to be interpreted. Recently, our Superior Court in *Parc Holdings, Inc. v. Killian*, 785 A.2d 106 (Pa.Super.2001), determined whether an easement granted for "ingress and egress" included occupation of the easement for utilities and set forth the following general rules of construction applicable to the interpretation of grants of easements:

> These rules provide that if the location, size or purpose of an easement is specified in the grant, then the use of an easement is limited to the specifications. *See Lease v. Doll*, 485 Pa. 615, 403 A.2d 558 (1979) and *Zettlemoyer v. Transcontinental Gas Pipeline Corp.*, 540 Pa. 337, 657 A.2d 920 (1995). If, however, the language of a granting deed is ambiguous regarding these matters, then the intent of the parties as to the original purpose of a grant is a controlling factor in determining the extent of an easement. *Zettlemoyer*, 657 A.2d at 926. Moreover, the intention of the parties "is determined by a fair interpretation and

3. Joiner, Bruce Bollinger, a relative of Joiner's, and a representative of Southwest Central testified at the hearing but only as to events that occurred after the easement was granted.

4. Our scope of review of a trial court's ruling on preliminary objections to a petition for appointment of viewers is limited to ascertaining whether necessary findings are supported by competent evidence or an error of law was committed by the trial court. *Department of Transportation v. Mano*, 149 Pa. Cmwlth. 337, 613 A.2d 119 (1992).

construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made." *Lease*, 485 Pa. at 623, 403 A.2d at 561 (quoting *Merrill v. Manufacturers Light and Heat Co.*, 409 Pa. 68, 73, 185 A.2d 573, 575 (1962)).

Whether a trial court properly interpreted a contract is a question of law and our scope of review is plenary. *Liddle v. Scholze*, 768 A.2d 1183 (Pa.Super.2001). As with any contract the rights conferred by the grant of an express easement must be ascertained solely from the language of the deed, provided that the deed language is unambiguous. *Dowgiel v. Reid*, 359 Pa. 448, 59 A.2d 115 (1948); *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). When the language is ambiguous, however, a court may resort to evidence of extrinsic circumstances as an aid to interpretation. *Id. When the purposes of an express easement are not specifically stated, the court must ascertain the objectively manifested intention of the parties in light of the circumstances in existence at the time of conveyance. Lease, supra. Whether an ambiguity exists is a question of law subject to plenary review. Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650 (Pa.Super.1999). However, resolution of conflicting parol evidence relevant to what the parties intended by an ambiguous provision is for the trier of fact. *Hutchison, supra.* (Emphasis added).

*Parc Holdings*, 785 A.2d at 111–12.[5]

 In effect, an easement is interpreted in the same manner as any other contract; if the language of the agreement is clear, our inquiry is ended; if it is ambiguous, then the trier of fact determines the intent of the parties. *Drummond v. Trustees of the University of Pennsylvania*, 651 A.2d 572 (Pa.Cmwlth. 1994). In this case, then, if the language of the easement can be used for all electric purposes, then our inquiry is ended, but if the easement is ambiguous, then the trial court, by the surrounding facts and circumstances, must find the intent of the parties. While we agree with Southwest Central that the express purpose of the easement was for the transmission of electricity, just as in *Parc Holdings* where the agreement was ambiguous as to whether "ingress and egress" included the physical occupation of utilities, here it is ambiguous whether the easement was granted only to serve the coal mine property or for distribution lines to bring electricity to one or more residential customers.

Because the trial court based its decision on Section 4.11 of the Third Restatement of Property, Servitudes, which has yet to be adopted in Pennsylvania, we remand this matter to the trial court to make findings as to the facts and circumstances at the time that the agreement was entered into as well as address the issue of abandonment and extinguishment.

---

**5.** Section 11.02 of Ladner on Conveyancing in Pennsylvania also provides that "[i]n the first instance, a court will look only at the document creating the easement to determine its nature and extent. If, on the face of the document, no doubt arises that the words are used in their primary sense and, if read in that sense, they are plain and unambiguous, the matter is concluded. The terms of the grant, as they can be learned by words clearly expressed, will regulate and measure the rights of the grantee. If the terms of the grant are general and do not limit the grantee to any specific manner of using the easement, it may be used for all ordinary purposes, if the manner in which it is used is reasonable." Ladner on Conveyancing in Pennsylvania, Section 11.02 (Clark, Ladner, Fortenbaugh & Young eds., 4th ed.1999).

### ORDER

AND NOW, this *8th* day of *November*, 2001, the Order of the Court of Common Pleas of Cambria County dated December 6, 2000, at No. 1998–1250, is vacated and this case is remanded to the trial court to make findings in accordance with this opinion.

Jurisdiction relinquished.