IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by the      :
Pennsylvania Turnpike           :
Commission of Property Located    :
in the Township of Bristol, Bucks   :
County, Commonwealth of        :
Pennsylvania for the I-95 Interchange :
Project (Parcel ID No. 05-020-048)  :
The Pennsylvania Turnpike Commission :
                              :
            v.         : No. 1186 C.D. 2016
                              : Submitted: March 6, 2017
Orange Hill, Inc. and Martin/Petrone, L.P., :
                              :
           Appellants      :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                     FILED:  March 28, 2017


            Orange Hill, Inc. and Martin/Petrone, L.P.[1] (collectively, Orange Hill) appeal the June 24, 2016 order of the Court of Common Pleas of Bucks County[2] (trial court) denying their motion for post-trial relief from the entry of

---

[1] Michael Petrone and Susan Petrone, his wife, together own 100% of Orange Hill, Inc. They also own 100% of Martine/Petrone, L.P., now known as M. Petrone of Pennsylvania, which owns a tract of land contiguous to the property at issue in this appeal.

[2] The Honorable Robert J. Mellon, who presided in this case, presided in another appeal related to the same condemnation, and his decision and order were affirmed by this Court in *Steen v. Pennsylvania Turnpike Commission*, 3 A.3d 747 (Pa. Cmwlth. 2010).

judgment in favor of the Pennsylvania Turnpike Commission (Commission). The trial court determined that Orange Hill was not entitled to just compensation for advertising sign/billboard pad sites on property condemned by the Commission because Orange Hill purchased the property subject to an easement and never owned a compensable interest in the sites. The trial court also rejected Orange Hill's argument that its December 2, 2015 order granting the Commission's motion in limine to preclude Orange Hill from presenting certain evidence constituted legal error, because Orange Hill was allowed to present its proffered evidence and the same was considered by the trial court during the non-jury trial. We affirm.

This appeal arises from a 2007 condemnation of property that had been encumbered with three billboards and was subject to an easement for use of and access to the billboards. *See Steen v. Pennsylvania Turnpike Commission*, 3 A.3d 747 (Pa. Cmwlth. 2010). The relevant facts and procedural history are not in dispute and may be briefly summarized as follows.

Terry L. Steen and Anita I. Steen owned four and a half acres of property, and three billboards erected thereon, in Bristol Township, Bucks County, Pennsylvania. When the Steens sold the property to Mountain Ridge Enterprises, Inc. (Mountain Ridge), they retained an easement to access and maintain the billboards. In relevant part, the Easement Agreement between Mountain Ridge (Grantor), Orange Hill's predecessor in title, and the Steens (Grantees) provided:

> 1. Grantor hereby grants and conveys to Grantee . . . an easement over the property for the purpose of ingress and egress . . . to the Signs for the purpose of using, inspecting, maintaining, replacing and repairing, changing the advertising message, and all other related uses, of the Signs . . . .
>
> 2. The aforesaid easement includes the right of access and the right to have the Signs remain on the property

2

being granted to the Grantee . . .
. . . .
4. The Signs shall be located in the approximate area in which they are located on the date of this conveyance and these Signs shall remain the sole property of the Grantee despite the aforesaid conveyance of fee simple title to the Property by the Grantee to the Grantor.

5. The Grantee may sell, transfer, convey, and assign all of Grantee's right, title and interest in the Signs and in the rights created pursuant to this easement agreement.
. . . .
13. If all of the property or material portion thereof is taken or condemned for a public or quasi-public use, to the extent that the Grantee may no longer maintain, use, or relocate the Signs within the Property, *the easement granted and created hereby shall automatically terminate as of the date title to the condemned real estate vests in the condemnor*, with the qualification that the foregoing shall apply only if Grantee is unable to relocate Grantee's Signs on the property . . . .

All proceeds and awards which may be payable as a result of the taking or condemnation of all or part of the Property shall belong to and be paid to the Grantor. *Notwithstanding the foregoing, Grantee shall have the right to assert a separate claim for loss of the Signs* if said condemnation results in the taking of the Signs or in the elimination of Grantee's access to the Signs. *Pursuant thereto, Grantor and Grantee shall each file separate claims for condemnation damages*.

3 A.3d at 748-49 (emphasis added). After the Easement Agreement was recorded, the Steens sold the signs to Steen Advertising, and they leased their easement to Steen Advertising in exchange for an annual fee.

Mountain Ridge conveyed its interest in the property to Orange Hill in March 2000. On June 27, 2007, the Commission filed a Declaration of Taking naming Orange Hill, Inc., and Steen Advertising, Inc., as condemnees. In

3

December 2007, Orange Hill, Inc. tendered possession of the property to the Commission in exchange for certain just compensation.

The Steens filed a separate petition for the appointment of a Board of Viewers, asserting that they should have been named as condemnees based on their ownership of the easement. The Commission filed preliminary objections. Relying on the express language of the Easement Agreement, the trial court concluded that the Steens were attempting to recover for an easement that had extinguished upon the filing of the declaration of taking and no longer had value. On appeal, this Court agreed that the easement was extinguished by operation of the express language of the Easement Agreement, and, therefore, no de facto taking of the Steen's property interest had occurred. 3 A.3d at 751-52.[3]

---

[3] We stated as follows:

> According to the Steens, the easement agreement defined the substantial property rights and interests vested in them, including the right to access the signs at all times, the right to have their signs remain on the property, the right to erect, use, inspect, install, maintain, repair and replace electrical lines to the signs, the right to sell, transfer, convey and assign all of their right, title and interest in the signs and in the rights created under the agreement. The Steens argue that their easement was extinguished by the Commission's condemnation of the servient estate, *i.e.*, the property, but because they were not named as condemnees in the declaration of taking, the Commission effectuated a *de facto* taking of their easement for which they are entitled to just compensation. Finally, the Steens argue that the language in Paragraph 13 of the Easement Agreement . . . expressly provided them with the right to file a separate claim. . . . .
>
> When reviewing an express easement, the rights conferred by the grant of an express easement must be ascertained solely from the language of the easement agreement, provided that the language of the agreement is unambiguous. . . .

**(Footnote continued on next page…)**

4

The Board of Viewers' April 2013 report did not include compensation to Orange Hill for the loss of the billboard pad sites. Orange Hill's expert appraised the value of the billboard pad sites as $824,000. The Board of Viewers noted the unique location (along a curve of I-95) and visibility of the billboards and stated that it *would have* found damages to be at or near that figure. However, the Board of Viewers concluded that Orange Hill was not the person/entity entitled to compensation for the taking of the billboards. Instead, citing the Easement Agreement, the Board of Viewers concluded that the Steens' easement terminated automatically upon condemnation and that Steen Advertising,

---

**(continued…)**

> Pursuant to the language of Paragraph 13 of the agreement, the easement automatically terminates in the event of a condemnation which eliminated the use of the Signs. While the provision also preserves "the right to assert a separate claim for loss of the Signs if said condemnation results in the taking of the Signs or in the elimination of Grantee's access to the Signs," the plain language provides a separate claim only for *loss of the signs* if the condemnation eliminates access to them, not a separate claim for *loss of access*. Once the Signs were condemned, the easement (allowing access to maintain and repair signs that no longer existed) ceased to have any value. A separate claim was recognized in the declaration of taking for loss of the Signs themselves, which by that time had been sold to Steen Advertising, Inc., the only entity which sustained a compensable loss other than the landowner, Orange Hill.
>
> Therefore, because the easement was extinguished by operation of the Easement Agreement, there is no property interest and, therefore, no *de facto* taking.

3 A.3d at 751-52 (quotations and citations omitted) (emphasis in original).

5

as the owner of the signs, was the only entity entitled to compensation for their loss. Reproduced Record (R.R.) at 45a-48a.

Orange Hill appealed to the trial court. On October 9, 2015, the Commission filed a motion in limine to preclude Orange Hill from introducing any testimony regarding a claim of ownership and economic loss related to the billboards. On October 21, 2015, the trial court heard argument on the motion, but the court did not rule on it prior to holding the non-jury trial that day.

Orange Hill presented extensive testimony from Richard Wolf, R.R. at 207a-95a, a real estate consultant and appraiser, who used a loss of income analysis to establish the value of the billboard pad sites. R.R. at 280a. The trial court asked a number of questions to clarify Wolf's testimony, and Wolf indicated that his opinion was based on his interpretation of paragraph 13 of the Easement Agreement and the Eminent Domain Code.[4] R.R. at 283a-85a.

The Commission's expert testified that he appraised that property at $800,000, adding that he considered the billboard sites but ascribed no particular value to them because, based on the plain language of the Easement Agreement, the property owner had no right to erect billboards on those sites after those rights were given by easement to the Steens. R.R. at 302a, 356a-58a.

At the conclusion of the trial, the trial court took the motion in limine under advisement. On December 2, 2015, the trial court issued an order stating that the Commission's motion in limine was granted and giving the parties until January 15, 2016 to settle the case. Thereafter, by order dated February 10, 2016, the trial court entered judgment in favor of the Commission. In its opinion, the trial court noted that under Section 302(a)(2) of the Eminent Domain Code,

---

[4] 26 Pa. C.S. §§101 - 1106.

"title which the condemnor acquires in the property condemned shall pass to the condemnor on the date of the filing, and the condemnor shall be entitled to possession under Section 307 . . . ." 26 Pa. C.S. §302(a)(2). The trial court explained that there was no time between the Commission's filing of the declaration of taking and the passing of title to the Commission during which title could have reverted to Orange Hill. Thus, because Orange Hill never owned or gained any economic gain from the condemned billboards prior to condemnation, it was not entitled to additional compensation for the billboard pad sites. The trial court further observed that Orange Hill had offered no authority to support its position, finding that *In re City of Altoona*, 388 A.2d 313 (Pa. 1978), and *Chew v. Commonwealth*, 161 A.2d 621 (Pa. 1960), were "readily distinguishable."[5]

On appeal to this Court, Orange Hill repeats its contention that it had a compensable reversionary interest in the billboard pad sites, as the grantor of an easement for access, which arose upon the extinguishment of the grantee's easement rights on the date of condemnation. Orange Hill again cites *City of Altoona* and *Chew*, but neither these cases nor any authority cited by Orange Hill supports its novel argument.

---

[5] In *City of Altoona,* the court held that when a municipality abandoned a dedicated street the property reverted automatically and simultaneously to abutting landowners.

In *Chew*, the plaintiffs were the original owners of land before it was condemned and had conveyed fee simple defeasible title to a railroad company. The plaintiffs retained a possibility of reverter in the event that the railroad ever ceased railroad operations on the land, and, in fact, the railroad was in the process of ending railroad operations when the state condemned the property. The court held that the plaintiffs' possibility of reverter had value and plaintiffs were entitled to just compensation because, at the time of condemnation it was "imminent and probable" that the plaintiffs' reversionary interest would vest. In contrast, Orange Hill never owned the billboard sites, and prior to the filing of the declaration of taking there was no indication that Steen Advertisement's easement would soon be terminated.

7

Rather, at the time of the condemnation that extinguished the easement, title passed to the Commission. Section 302(a)(2) of the Eminent Domain Code, 26 Pa. C.S. §302(a)(2); *Steen*, 3 A.3d at 751-52. Thus, the trial court correctly held that Orange Hill never owned the right to use the billboard pad sites and was not entitled to just compensation for a loss of income derived from those sites.

Our resolution of this issue renders Orange Hill's second argument moot. Even if the issue is not moot, however, the trial court's order granting the motion in limine is of no consequence. The record reveals that the trial court allowed Orange Hill to present testimony and evidence, and there was virtually no dispute as to the value of the property interest asserted by Orange Hill. More important, the dispositive issue is a question of law to which the evidence and ruling on the motion in limine are not relevant.

In sum, and as observed in the commendably concise brief from the Commission: Orange Hill did not own and never had any economic interest in the billboards or the billboard pad sites; the language of the order granting the motion in limine is irrelevant; and the trial court did not err entering judgment in the Commission's favor.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by the :
Pennsylvania Turnpike :
Commission of Property Located :
in the Township of Bristol, Bucks :
County, Commonwealth of :
Pennsylvania for the I-95 Interchange :
Project (Parcel ID No. 05-020-048) :
The Pennsylvania Turnpike Commission :
 :
v. : No. 1186 C.D. 2016
 :
Orange Hill, Inc. and Martin/Petrone, L.P., :
 :
Appellants :

O R D E R

AND NOW, this 28th day of March, 2017, the order of the Court of Common Pleas of Bucks County, dated June 24, 2016, is affirmed.

_____
MICHAEL H. WOJCIK, Judge