J-A12019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| EDWARD T. ESPOSITO AND MALINDA A. ESPOSITO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE ASSOCIATION OF PROPERTY OWNERS OF THE HIDEOUT, INC. AND HIDEOUT INC. ASSN. OF PROPERTY OWNERS | : | |
| | : | |
| | : | |
| APPEAL OF: THE ASSOCIATION OF PROPERTY OWNERS OF THE HIDEOUT, INC. | : | No. 2257 EDA 2023 |

Appeal from the Judgment Entered August 8, 2023
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 2021-00034

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED AUGUST 15, 2024**

Appellant, the Association of Property Owners of The Hideout, Inc.,[1]

appeals from the judgment entered in the Wayne County Court of Common

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Generally, the Commonwealth Court is vested with exclusive jurisdiction over appeals involving not-for-profit corporations.  **See** 42 Pa.C.S.A. § 762(a)(5).  Here, Appellant is a not-for-profit corporation.  (**See** Appellant's Proposed Findings of Fact, filed 6/20/23, at ¶2).  Nevertheless, we exercise jurisdiction over this case, where Appellees have not objected to this Court's jurisdiction.  **See Flaxman v. Burnett**, 574 A.2d 1061 (Pa.Super. 1990) (declining to transfer cause of action to Commonwealth Court where parties did not raise objection to Superior Court's assumption of jurisdiction, as required by Pa.R.A.P. 741(a)).

Pleas, in favor of Appellees, Edward T. Esposito and Malinda A. Esposito. We affirm.

The relevant facts and procedural history of this appeal are as follows. Appellees own the property at 1145 Lakeview Drive ("Lot 1145"). Appellees' property is part of a planned community known as The Hideout. Appellant is The Hideout's homeowners' association. The Hideout is composed of lots owned by Appellant's individual members, as well as common areas owned by Appellant. Roamingwood Lake is part of a common area owned by Appellant. The lake lies to the east of Appellees' property. Appellant's primary beach for the lake is located to the southeast of Appellees' property.

The parties' dispute involves a piece of land situated in a common area between the rear boundary line of Appellees' property and the lake ("disputed property"). Appellees' property and the disputed property are separated from Appellant's beach by large boulders, trees, and a retaining wall. The certified record includes a survey plan, a portion of which depicts the disputed property as follows:



| LINE | BEARING | DISTANCE |
|------|---------|----------|
| L1 | N 84°48'35" W | 13.20' |
| L2 | N 59°40'59" E | 77.42' |
| L3 | S 05°21'05" E | 14.68' |
| L4 | S 24°23'49" E | 33.18' |
| L5 | S 36°29'03" E | 24.37' |
| L6 | S 44°35'42" W | 56.26' |
| L7 | N 84°48'35" W | 49.37' |
| L8 | N 05°11'25" E | 60.00' |

(Appellees' Trial Exhibit 29).[2]

---

[2] "In order to accurately reference the disputed property, the [trial] court identifies it as the property within the boundaries depicted with lines bearing distances L1 through L8 on the survey plan…." (Trial Court Opinion and Verdict, filed 7/13/23, at 1 n.1).

The trial court opinion set forth the remaining facts of this appeal as follows:

> The parties do not dispute the chain of title or the existence of an easement by virtue of the deeds throughout the chain of title. Lot 1145 was purchased by William and Eileen Culley from [Appellant] in 2002. Mr. Culley negotiated the easement language described herein. The Culleys conveyed Lot 1145 to Mark and Debra Goldsmith in 2002. The Goldsmiths conveyed Lot 1145 to Theodore and Renee Stevens in 2013. The Stevenses conveyed Lot 1145 to [Appellees] in 2018. Specifically, the relevant deed language throughout the chain of title is as follows: "Together with an easement of access to Roamingwood Lake and an easement to place a dock on the premises extending into Roamingwood Lake."
>
> Throughout the years and ownership of Lot 1145, the disputed property was developed and maintained by the owners of Lot 1145. Mr. Culley built the homeland garage on Lot 1145 and installed a dock, patio and swale on the disputed property consistent with his intent and purpose for purchasing the property from [Appellant]. [Appellant] had approved the required permits for Mr. Culley's plan. The Goldsmiths then put in a gravel yard, after obtaining a permit from [Appellant] to do so, and various outdoor furniture to enhance the lakefront area of the disputed property and exclusively maintained the disputed property. The Stevenses, during their ownership, improved the disputed property by replacing the dock and adding a deck. [Appellant] approved the same by issuing the required permits. The Stevenses exclusively maintained the disputed property.
>
> During [Appellees'] ownership, [Appellant], though its representatives and employees, represented Lot 1145 as a "lake house" and acquiesced to [Appellees'] exclusive use and maintenance of the disputed property. Lot 1145 was referred to as "lakefront" in documents and correspondence produced by [Appellant]. At the time [Appellees] purchased Lot 1145, a sign existed facing the beach area depicting the disputed property as "private property" and advising users of the common areas such as the beach and tennis courts

- 4 -

not to trespass on the disputed property. Pursuant to [Appellant's] policies and procedures, it must approve all signage. There is no evidence that [Appellant] objected to or issued any violations due to the signage.

In 2018, [Appellant] issued a permit approving [Appellees] to remove trees, a majority of which were located on the disputed property. [Appellees] removed the trees at their expense. In 2019, [Appellant] issued a shoreline improvement permit for [Appellees] to install an additional 13-foot by 18-foot deck in the disputed property. Also in 2019, [Appellant] issued a permit for [Appellees] to remove additional trees from the disputed property, and [Appellees] did so at their expense. In 2020, [Appellees], with the approval of [Appellant], installed a 15-foot by 20-foot fieldstone patio in the disputed property. [Appellant's] environmental manager at the time, Ryan Hill, and [Appellees] exchanged correspondence for the purpose of deterring others from entering the disputed property. Mr. Hill assisted [Appellees] with the installation of signage in order to prevent those in close proximity of the beach area and tennis courts from entering the disputed property. Mr. Hill also approved [Appellees'] installation of posts and rope between the common beach area and the disputed property.

The disputed property contains only improvements installed by [Appellees] and their predecessors with the consent of [Appellant]. In November of 2020, however, counsel for [Appellant] sent correspondence to [Appellees] stating that the common beach area separates [Appellees'] property from the lake and that [Appellees] cannot exclude any members from said common area. The letter also recognized the easement granted by [Appellant] and that [Appellees] have a deeded right across the beach area to access the lake.

(Trial Court Opinion and Verdict at 2-3) (some capitalization omitted).

On February 5, 2021, Appellees filed a complaint with counts for quiet title, promissory estoppel, and declaratory judgment. The parties proceeded to a bench trial on April 6, 2023. Appellees presented testimony from Mr.

- 5 -

Culley, who explained the circumstances behind his purchase of Lot 1145 from Appellant and the creation of the easement in the deed to Lot 1145. (*See* N.T. Trial, 4/6/23—Morning, at 9-11). The trial continued on April 27, 2023. At that time, Appellant presented testimony from Scott Savini, who served as Appellant's community manager/secretary in 2002. In this capacity, Mr. Savini signed the deed conveying Lot 1145 to the Culleys. Significantly, Mr. Savini testified that it was not Appellant's intention to provide the Culleys with exclusive access to the disputed property. (*See* N.T. Trial, 4/27/23, at 66).

Following trial, the court directed the parties to submit proposed findings of fact and conclusions of law. The parties subsequently complied. On July 13, 2023, the court issued an opinion and verdict in favor of Appellees. In its opinion, the court found "the general grant from [Appellant] to [Appellees] and their predecessors is ambiguous regarding its scope and location." (Trial Court Opinion and Verdict at 4). Because it could not determine the exact parameters of the easement from the language in the deed alone, the court evaluated "parol evidence to make that determination." (*Id.*) After evaluating this evidence, the court concluded that the parties intended for the easement to be exclusive. Thus, the court returned a verdict in favor of Appellees and further ordered:

> [Appellees], their successors, heirs, and assigns, are granted the exclusive right to use the disputed property and the dock extending therefrom, that [Appellees'] property is considered lakefront, that [Appellant] is barred from interfering with said rights, and that this Order be recorded in the Office for the Recorder of Deeds of Wayne County and

indexed against the parties as to the properties identified herein.

(*Id.* at 9).

On Monday, July 24, 2023, Appellant timely filed a post-trial motion. Among other things, Appellant requested judgment notwithstanding the verdict ("JNOV") because the deed to Lot 1145 did not include "any language stating that the easement granted over the disputed piece of land … was for the exclusive use of the owner or owners of Lot 1145[.]" (Post-Trial Motion, filed 7/24/23, at 2). The court denied Appellant's post-trial motion on August 2, 2023. On August 8, 2023, Appellees filed a *praecipe* to enter judgment on the verdict.

Appellant timely filed a notice of appeal on August 31, 2023. On September 5, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed its Rule 1925(b) statement on September 25, 2023.

Appellant now raises the following issues for this Court's review:

Whether the August 8, 2023 judgment should be reversed, and the July 13, 2023 verdict/order vacated, with judgment entered in favor of [Appellant], when:

1)    [Appellant] was entitled to a JNOV;

2)    the trial court erred as a matter of law in reaching its July 13, 2023 opinion and verdict/order; and

3)    in finding and concluding, in its July 13, 2023 opinion, that [Appellees] possess an exclusive easement over the disputed property, the trial court

erred when it: a) looked beyond the plain terms of the easement set forth in the Culley deed; b) disregarded evidence that showed that the easement was not exclusive and failed to recognize that the record did not support its contrary conclusion; c) considered evidence unconnected with the original grant and disregarded significant evidence post-dating the original grant; and d) improperly concluded that a non-exclusive easement would serve no purpose?

Did the trial court err as a matter of law when it concluded that [Appellees'] property was "lakefront," or, alternatively, was its ruling against the great weight of evidence that shows that [Appellees] had no "exclusive easement," and that their property was not contiguous with any lake?

To the extent the trial court ruled for [Appellees] on Counts III-IV of the complaint, did it err as a matter of law, or were its conclusions and findings unsupported by sufficient or competent evidence, and/or contrary to the great weight of the evidence?

(Appellant's Brief at 5-6).

In its first issue, Appellant raises multiple arguments regarding its entitlement to relief.[3]  Appellant asserts that the 2002 deed ("Culley deed") did **not** provide the owners of Lot 1145 with an exclusive easement over the disputed property.  Because the Culley deed did not make any mention of exclusivity, Appellant argues that the easement clause was unambiguous, and the court should not have conducted any further analysis.  Appellant insists that the court incorrectly found ambiguity where none existed, and the court

_____

[3] Initially, Appellant claims it was entitled to JNOV.  Later, Appellant asserts that "[f]or similar, if not identical reasons to those stated above with regard to the JNOV issue, … the trial court erred as a matter of law in reaching its July 13, 2023 opinion and verdict/order."  (Appellant's Brief at 52).

"essentially rewrote the easement grant under the guise of construing it." (*Id.* at 44). Further, Appellant relies on *Mercantile Library Co. of Philadelphia v. Fidelity Trust Co.*, 235 Pa. 5, 15, 83 A. 592, 595 (1912), for the proposition that "the owner of land, who grants a right of way over it, conveys nothing but the right of passage, and reserves all incidents of ownership not granted." Appellant maintains that the court disregarded the relevant case law in finding that Appellees possessed an exclusive easement. (*Id.* at 46).

Even if the easement clause was ambiguous as to exclusivity, Appellant contends that Appellees failed to present evidence of "what was 'known to the parties' at [the] time [of the grant], as required in the face of any ambiguity." (*Id.* at 51) (citing *Joiner v. Southwest Cent. Rural Elec. Co-op Corp.*, 786 A.2d 349, 352 (Pa.Cmwlth. 2001)).[4] To the extent that the record contained some evidence of the circumstances known to the parties at the time of the grant, Appellant reiterates that the parties did not intend for the easement to be exclusive. Appellant submits that the only evidence that was relevant to explain the words of the easement was the testimony of Mr. Culley and Mr. Savini. Appellant complains, however, that the court improperly considered

---

[4] *See also Petow v. Warehime*, 996 A.2d 1083, 1089 n.1 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 371 (2010) (stating: "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate").

additional evidence from Appellees,[5] which went "beyond the circumstances surrounding the grant and the intentions of the parties at the time of the grant." (*Id.* at 61).  Finally, Appellant avers:

> The trial court also erred when it concluded that the easement grant had to have been for an exclusive easement because a "non-exclusive easement" over a common area, like the land between Lot 1145 and Roamingwood Lake … would serve no purpose, since all Association members may use common areas of the Hideout subdivision.

(*Id.* at 66).  Appellant concludes that this Court must reverse the judgment entered in favor of Appellees, vacate the order entering the verdict in favor of Appellees, and direct the trial court to enter judgment in Appellant's favor. We disagree.

This Court applies the following standard of review to verdicts following a bench trial:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law.  The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury.  We consider the evidence in a light most favorable to the verdict winner.  We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.  However, [where] the issue … concerns a question of law, our scope of review is plenary.

---

[5] Appellant refers to Appellees' evidence "as to the permits granted by [Appellant] to the owners of Lot 1145 and the improvements made to the disputed property occurring well after the time of the original grant[.]" (Appellant's Brief at 61).

> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Stephan v. Waldron Elec. Heating and Cooling LLC***, 100 A.3d 660, 664-65 (Pa.Super. 2014) (quoting ***Wyatt Inc. v. Citizens Bank of Pennsylvania***, 976 A.2d 557, 564 (Pa.Super. 2009)).

To the extent Appellant also challenges the denial of its request for JNOV, we add:

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard[s] of review when considering motions for a directed verdict and [JNOV] are identical. We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

***Reott v. Asia Trend, Inc.***, 7 A.3d 830, 835 (Pa.Super. 2010), *aff'd*, 618 Pa. 228, 55 A.3d 1088 (2012) (quoting ***Campisi v. Acme Markets, Inc.***, 915 A.2d 117, 119 (Pa.Super. 2006)).

"[I]t is a well established legal principle that an easement is an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." ***In re Borough of Downingtown***, 639 Pa. 673, 726, 161 A.3d 844, 877 (2017) (internal citation, emphasis, and quotation marks omitted).

> The same rules of construction that apply to contracts apply in the construction of easement grants. The law on the interpretation of easements is clear. To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument. Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.
>
> Ambiguous words are construed in favor of the grantee. Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and of the surrounding circumstances. Further,
>
>> [w]here the grant of an easement is unrestricted, the grantee is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted. Thus, our cases tell us that when the grant of an easement is ambiguous we must determine if the grantee's asserted use is a reasonable and necessary use in relation to the original purpose of the grant and within the intention of the original parties to the grant.

***Berwick Township v. O'Brien***, 148 A.3d 872, 883 (Pa.Cmwlth. 2016), *appeal denied*, 641 Pa. 651, 169 A.3d 532 (2017) (internal citations, emphasis, and quotation marks omitted). "Whether an ambiguity exists is a

question of law subject to plenary review. However, resolution of conflicting parol evidence relevant to what the parties intended by an ambiguous provision is for the trier of fact." **PARC Holdings, Inc. v. Killian**, 785 A.2d 106, 112 (Pa.Super. 2001), *appeal denied*, 568 Pa. 702, 796 A.2d 984 (2002) (internal citations omitted).

Instantly, the disputed property is a piece of land in one of Appellant's common areas, and it lies between the rear boundary line of Appellees' property and the lake. For the Culleys and future owners of Lot 1145 to access the lake, the Culley deed included the following easement: "TOGETHER with an easement of access to Roamingwood Lake and an easement to place a dock on the premises extending into Roamingwood Lake." (Appellees' Trial Exhibit P1 at 2). The court evaluated this language and found it to be ambiguous. The court added that "[t]he easement specifies no measurements or location and does not expressly provide that the easement is exclusive. Only the purpose of the easement is unambiguous[.]" (Trial Court Opinion and Verdict at 4).

Here, the language granting the easement makes no mention of whether the privilege was exclusively for the benefit of the dominant estate.[6] Even if the deed mentioned exclusivity, "Pennsylvania law does not establish that the

---

[6] "The land enjoying the privilege is referred to as the 'dominant tenement,' and the land subject to the privilege is known as the 'servient tenement.'" **Ephrata Area School Dist. V. County of Lancaster**, 886 A.2d 1169, 1174 (Pa.Cmwlth. 2005), *reversed*, 595 Pa. 111, 938 A.2d 264 (2007).

use of the term 'exclusive easement' is sufficient as a matter of law to grant an easement which excludes the servient estate[.]" ***Fedorko Properties, Inc. v. C.F. Zurn & Associates***, 720 A.2d 147, 149 (Pa.Super. 1998). Under these circumstances, we cannot say that the court erred in finding an ambiguity. ***See Stephan, supra***; ***PARC Holdings, Inc., supra***.

After finding an ambiguity, the court analyzed evidence of the original parties' intentions and the original purpose of the grant. ***See Berwick Township, supra***. The court noted:

> Mr. Culley testified that he intended to purchase Lot 1145 to develop the property, build a house and have it as a lakefront house. Mr. Culley negotiated the easement with [Appellant] through its community manager at that time, Scott Savini, as a requirement of his purchase. He further testified that the easement area was supposed to cover the lakefront to the south of the property. Since every member of [Appellant] has the right to access the lake through common areas, the easement was not necessary to grant Mr. Culley access to the lake; however, it was necessary to enable Mr. Culley's intended purpose for the property, which was to provide the homeowner on Lot 1145 with his own access to the lake. Mr. Savini testified on behalf of [Appellant]. When asked if it was his intention to give Mr. Culley exclusive access to the area identified as the disputed property he answered in the negative. On cross-examination, he stated that he understood the purpose of a dock to be for Mr. Culley's use.
>
> Only the testimonies of Mr. Culley and Mr. Savini are relevant to construe the words of the easement with reference to the attending circumstances known to the parties at the time the grant was made. At that time, in 2002, Lot 1145 and the disputed property were vacant and undeveloped. After purchasing Lot 1145, Mr. Culley developed and improved the land. Mr. Culley and all subsequent owners used and enjoyed Lot 1145 in conjunction with the disputed property just as any lakefront

- 14 -

lot owner would do. Neither party has asserted that the easement was ever being used for a purpose different from that for which it was created, and there is no evidence that there was a subsequent agreement to limit or reduce the usage.

\*　　\*　　\*

It is clear from the evidence presented that [Appellant's] acquiescence, as demonstrated by the issuance of permits and other correspondence and efforts to exclude anyone other than the owners of Lot 1145 from the disputed property, reflects that the parties intended for the easement to be exclusive.

(Trial Court Opinion and Verdict at 6-7) (internal citations and some capitalization omitted).

We agree with the court's conclusions and emphasize Mr. Culley's testimony that the easement was supposed to cover "[t]he area at the lakefront in front of the property." (N.T. Trial, 4/6/23—Morning, at 10). Mr. Culley wanted the easement because "[i]t would make the property more valuable to have it as a lakefront." (*Id.* at 10-11). Mr. Culley acknowledged that the owner of Lot 1145 could access the lake via Appellant's beach to the south, but Mr. Culley insisted on obtaining the easement so that "eventually when the house was built [on Lot 1145] the owner of the house would have his own access to the lake." (*Id.* at 11). Further, Appellees' counsel and Mr. Culley had the following exchange on direct examination:

Q:　　At the time that you purchased the property did you have any intention as to who could use that area behind the house up to the lake?

A:　　The person who owned the property.

- 15 -

Q:      Okay.  Did you ever contemplate anyone else using that property, area behind the house up to the lake?

A:      Never considered that, nope.

                    *    *    *

Q:      Alright.  Mr. Culley, did you ever intend that the easement or that the area behind the property ever be developed by The Hideout?

A:      Never considered that.

(*Id.* at 11-12).

This testimony covered Mr. Culley's intentions and the original purpose of the easement.  To the extent that Mr. Savini provided conflicting testimony, the resolution of the conflicting evidence was left to the court as trier of fact. ***See PARC Holdings, Inc., supra***.  Regarding the court's consideration of evidence of the parties' usage of the easement after Mr. Culley purchased Lot 1145, Appellant insisted that the court "could not have properly considered the fact that improvements were made to the disputed property or easement as being beyond the circumstances surrounding the grant and the intentions of the parties at the time of the grant."  (Appellant's Brief at 61). Nevertheless, we agree with Appellees' conclusion that the court properly considered these circumstances, which "simply reflected that the parties intended for the easement to be exclusive."  (Appellees' Brief at 32) (citing ***Zettlemoyer v. Transcontinental Gas Pipeline Corp.***, 540 Pa. 337, 349, 657 A.2d 920, 926 (1995) (acknowledging "that a grantee's subsequent

agreement, use, and acquiescence has some value as evidence of the original intent or purpose of the grant")).

Viewing all evidence in the light most favorable to Appellees as verdict winners, we cannot say that the court committed an error of law in reaching its verdict. **See Stephan, supra**. Likewise, the court did not abuse its discretion or commit an error of law in denying Appellant's post-trial motion for JNOV. **See Reott, supra**. Therefore, Appellant is not entitled to relief on its first claim.

In its second and third issues, Appellant refers to the second, third, and fourth counts in Appellees' complaint. Appellant recognizes that the second count of the complaint contained an averment that Lot 1145 is lakefront property. Appellant insists that the court erred in finding that Lot 1145 was lakefront property where "the record conclusively shows that the property was not lakefront property." (Appellant's Brief at 70). Regarding the third count of the complaint, which raised a promissory estoppel claim, Appellant argues that "[t]he doctrine could not have been applied in this case because there was a contract here—the Culley deed from [Appellant] and the other deeds in the chain of title that explained exactly what [Appellees] were receiving[.]" (**Id.** at 72). Regarding the fourth count of the complaint, which sought declaratory judgment, Appellant asserts that "a declaratory judgment action is only as valid as the theories supporting it." (**Id.** at 78). In light of Appellant's conclusion that Appellees' theories of relief were meritless,

Appellant insists that the court erred in granting any relief on the fourth count. Based upon the foregoing, Appellant concludes that the court committed reversible error by rendering a verdict in favor of Appellees on the second, third, and fourth counts of the complaint.

We note, however, that each count in Appellees' complaint sought the same relief: judgment in Appellees' favor and an order granting Appellees, their successors, heirs and assigns, the exclusive right to use the disputed property and the dock extending therefrom. (**See** Complaint at ¶¶ 63, 68, 75, and 78). As we have already concluded that the court correctly decided that Appellees are entitled to the exclusive use of the disputed property, we decline to provide additional analysis of Appellant's alternative theories for relief.[7] **See Sereda v. Center City Acquisitions, LLC**, 222 A.3d 1161, 1170 n.7 (Pa.Super. 2019) (reiterating that this Court may affirm on any basis). Accordingly, we affirm the judgment entered in favor of Appellees.

Judgment affirmed.

_____

[7] Moreover, the court's verdict sheet did not list or address the individual counts raised in the complaint. Instead, the order baldly asserted "that a non-jury verdict is entered in **FAVOR** of [Appellees], and **AGAINST** [Appellant]." (Trial Court Opinion and Verdict at 9) (emphasis in original). Therefore, the record does not conclusively demonstrate whether the court intended to grant relief on one, some, or all counts in the complaint.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/15/2024